Dan Lawton, Bar No. 127342
dlawton@klinedinstlaw.com
Arianna Camargo, Bar No. 357649
acamargo@klinedinstlaw.com
KLINEDINST PC
501 West Broadway, Suite 1100
San Diego, California 92101
(619) 400-8000

Attorneys for Plaintiff Jeff Lambing and all other persons similarly situated

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

JEFF LAMBING, a natural person, on behalf of himself and all other persons similarly situated,

Plaintiffs,

v.

SNAP LOCK INDUSTRIES INC. d/b/a SNAPSPORTS COMPANY, a Utah corporation; and DOES 1-10,

Defendants.

Case No. 2:25-cv-09575-MWC-BFM

**SECOND AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF – ACTION SEEKING STATEWIDE OR NATIONWIDE RELIEF (PER L.R. 83-11.2)**

For his claims for relief against defendant Snap Lock Industries Inc., and under FED. R. CIV. P. 8(a) and 15(a)(2) and the Court's order filed February 26, 2026 (Doc. 32), plaintiff Jeff Lambing, on behalf of

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

himself and all others similarly situated (the "Plaintiff Class" defined below), now alleges and avers as follows.

**PARTIES**

1. Plaintiff Jeff Lambing is a natural person and a resident of the County of San Diego, State of California.

2. Defendant Snap Lock Industries Inc. ("SnapSports") is a corporation organized and existing under the laws of the State of Utah and has as its fictitious business name SnapSports Company. It is a manufacturer of interlocking modular flooring used to create athletic surfaces (*e.g.*, basketball courts) in both residential and commercial settings. SnapSports holds dozens of patents and a portfolio of over twenty products spanning the garage, event, and sports market segments of the flooring industry, and boasts of the uniqueness and ease of installation of its modular surfaces.

3. Mr. Lambing is ignorant of the true names and capacities of the defendants sued herein as DOES 1 to 10 and therefore sues these defendants by such fictitious names. Mr. Lambing will amend these claims for relief to allege the true names and capacities when they are ascertained.

4. Mr. Lambing is informed and believes, and thereon alleges, that each fictitiously named defendant is responsible in some manner for the occurrences herein alleged, and Mr. Lambing's injuries and damages as herein alleged were directly, proximately, and/or legally caused by defendants, and all of their acts.

5. Mr. Lambing is informed and believes, and thereon alleges, that the aforementioned DOES are somehow responsible for the acts alleged herein as the agents, employers, representatives, or employees of other named defendants, and in doing the acts alleged herein, were acting within the scope of their agency, employment, or representative capacity, as said named defendants, or of each other.

6. Mr. Lambing is informed and believes, and thereon alleges, that each of these defendants named herein, are the agents, employers' representatives, or employees of the other named defendants, and in performing the acts alleged herein, were acting within the scope of their agency, employment, and/or representative capacity, and are therefore responsible for the acts complained of herein.

7. At all times mentioned herein, defendants, and each of them, were the agents, servants, co-conspirators, or employees of one another,

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

and the acts and omissions herein alleged were done or suffered by them, acting individually and through or by their alleged capacity, within the scope of their authority. Each of the defendants aided and abetted and rendered substantial assistance in the accomplishment of the acts complained of herein. In taking the actions, as particularized herein, to aid and abet and substantially assist in the commission of the misconduct complained of, each defendant acted with an awareness of his, her or its primary wrongdoing and realized that his, her or its conduct would substantially assist in the accomplishment of that misconduct and was aware of his, her or its overall contribution to, and furtherance of the conspiracy, common enterprise, and common course of conduct. Defendants' acts of aiding and abetting included, *inter alia*, all of the acts each defendant is alleged to have committed in furtherance of the conspiracy, common enterprise, and common course of conduct complained of herein.

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

## JURISDICTION AND VENUE

8. This is a civil action whose amount in controversy exceeds $75,000 and which is between citizens of different States. As a result, the Court has original jurisdiction of this action under 28 U.S.C. § 1332.

9. This Court has supplemental jurisdiction over the State law-based claim for reliefs according to 28 U.S.C. § 1367(a). This is because the State law-based claims are so related to the claims over which the Court has subject matter jurisdiction that they form part of the same case or controversy and derive from a common nucleus of operative facts.

10. The acts and transactions complained of herein were conceived, carried out, made effective, and had effect within the State of California and this District.

11. Venue is proper under 28 U.S.C. §§ 1391(b) and 1391(c) because SnapSports has a regular and established place of business in this District and in that a substantial part of the events or omissions giving rise to the claims and the threatened and actual harm to the Plaintiff Class (as defined below) occurred in this District by reason of the conduct of SnapSports alleged hereinbelow.

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

## PLAINTIFF CLASS ALLEGATIONS

12. Under Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, Mr. Lambing will seek certification of a class (sometimes hereinafter the "Plaintiff Class") consisting of all present dealers and former dealers of SnapSports products that either installed, quoted, or sold SnapSports products—whether under the terms of a written contract or an implied-in-fact contract—and who were assigned or recognized by SnapSports as serving a defined geographic territory or customer base, from October 3, 2021, to March 27, 2026 (the "Class Period"), irrespective of whether such persons ultimately suffered monetary damages. The Plaintiff Class is defined based on objective criteria and is not limited to persons or entities that have suffered injury or are entitled to recover damages.

13. Excluded from the Plaintiff Class are SnapSports, SnapSports' affiliates, officers and directors, persons that purchased SnapSports products before the Class Period, and the Judge(s) assigned to this case. Plaintiff reserves the right to modify, change, or expand the class definitions if discovery and/or further investigation reveal that they should be expanded or otherwise modified.

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

14. Numerosity: Because SnapSports engaged in deceptive, widespread business practices, the members of the Plaintiff Class are so numerous that joinder of all members is impracticable. While the exact number of Plaintiff Class members can be determined only by appropriate discovery, Mr. Lambing believes that class members number in excess of 30, including several in California, including in El Dorado Hills, Bakersfield, Pleasant Hill, and Thousand Oaks.

15. Typicality: Mr. Lambing's claims are typical of the claims of members of the Plaintiff Class because Mr. Lambing is a dealer that entered into an agreement with SnapSports to install, quote, or sell SnapSports products and was assigned or recognized by SnapSports as serving a defined geographic territory or consumer base, as did each member of the Plaintiff Class. The events giving rise to Mr. Lambing's claims for relief are the same or highly similar to those giving rise to the claims of other members of the Plaintiff Class.

16. Adequacy: Mr. Lambing is an adequate representative for the Plaintiff Class because Mr. Lambing's interests do not conflict with the interests of the Plaintiff Class that Mr. Lambing seeks to represent. Mr. Lambing has retained counsel competent and experienced in class

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

action litigation. The interests of the Class will be fairly and adequately protected by Mr. Lambing and experienced counsel.

17. Superiority: A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the damages suffered by some individual Plaintiff Class members may be relatively small, the expense and burden of individual litigation makes it virtually impossible for the Plaintiff Class members individually to seek redress for the wrongful conduct alleged. Even if members of the Plaintiff Class could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, an economy of scale, and comprehensive supervision by a single court. Members of the Plaintiff Class can be readily identified and notified based on, *inter alia*, the records (including databases, e-mails, installation records and files, etc.) maintained by SnapSports.

18. <u>Existence/ Predominance of Common Questions of Fact and Law:</u> Common questions of law and fact exist as to all members of the Plaintiff Class and predominate over any questions affecting solely individual members of the class. Among the questions of law and fact common to the Plaintiff Class are:

(a) Did SnapSports engage in false, misleading, and/or unlawful business practices;

(b) Did SnapSports breach contracts with members of the Plaintiff Class;

(c) Did SnapSports illicitly interfere with economic relationships between members of the Plaintiff Class and their customers and prospective customers; and

(d) What remedies are available to remedy the harms caused by SnapSports' wrongdoing.

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

## <u>SNAPSPORTS' WRONGFUL COURSE OF CONDUCT</u>

19. On January 5, 2018, SnapSports proposed to Mr. Lambing that certain letter agreement appointing Mr. Lambing as the exclusive dealer of SnapSports products in a territory including parts of this District and the Southern District of California. On information and

belief, the parties, or at least one of them, did not sign this letter agreement. Nevertheless, SnapSports actions in accordance with and in compliance with the agreement indicates ratification. SnapSports required Mr. Lambing and other members of the Plaintiff Class to set up their own businesses, build the SnapSports brand, and sell and install SnapSports products in their respective territories. SnapSports used Mr. Lambing's and other members of the Plaintiff Class's expertise and knowledge of their respective local markets to build the SnapSports brand.

20. As the dealers of SnapSports products in, among other Districts, this District and in the Southern District of California, Mr. Lambing and other members of the Plaintiff Class were promised the opportunity to market, advertise, promote, resell, and install SnapSports products as independent contractors in return for payment of fees by customers.

21. For a time, SnapSports sent Mr. Lambing and other members of the Plaintiff Class leads, *i.e.*, the names, contact information, and other details pertaining to would-be customers who had become known to SnapSports. For years, Mr. Lambing and other

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

members of the Plaintiff Class developed and maintained business relationships with these customers, selling SnapSports products to them, installing those products on customers' properties, and bringing popularity and awareness to SnapSports products.

22. In or about August 2023, Mr. Lambing discovered that SnapSports had secretly engaged in direct sales to and installations for consumers within Mr. Lambing's territory, bypassing Mr. Lambing contrary to the terms of the implied-in-fact contract described further hereinbelow at ¶ 36 and without prior notice or authorization.

23. SnapSports undermined Mr. Lambing and other members of the Plaintiff Class by flying SnapSports employees from Utah to job sites in order to do installations of its products in this District and in other States, depriving those dealers of the fees which they otherwise would have earned. On information and belief, SnapSports failed to secure and maintain the insurance coverage required to perform and complete the orders, did not bother to seek or get the necessary State-issued licenses which would have allowed it to do the work validly, failed to comply with California's wage-and-hour laws, failed to register for qualification to transact business in California under the provisions

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

of California Corporations Code § 2105, and did not pay the appropriate taxes. As a result, SnapSports has engaged in deceptive business practices by selling and installing jobs and/ or products, to their profit, while simultaneously cheating SnapSports dealers – members of the Plaintiff Class – out of the fees they otherwise would have earned, to the detriment of not only those dealers but also fair competition in this District and elsewhere. SnapSports' practices described hereinabove enabled it to sell and install products at prices much lower than would have been possible had SnapSports complied with applicable laws and agreements it had with members of the Plaintiff Class.

24. In California, persons and companies who install flooring and equipment must possess a contractor's license issued by the Contractors State License board, if the total amount of the job exceeds $500 for products and labor. In addition, all salespersons must be registered with and maintain a Home Improvement Sales License from the Board for projects over $1,000. During the Class Period, despite possessing neither of these, SnapSports illicitly installed flooring and equipment in California on projects exceeding $500 and $1,000.

25. When Mr. Lambing learned of these practices, he contacted

SnapSports and complained. SnapSports replied saying this:

> The inside Sales team issue was sternly addressed this morning by Rustin. While I'm not entirely clear on where the miscommunication issue originated, it is now crystal clear to the inside team that any incoming lead in the vicinity of a SnapSports partner territory MUST be checked via zip code in our map software and forwarded accordingly.

26. Mr. Lambing took SnapSports at its word. But, in January 2025, Mr. Lambing learned through an independent source that SnapSports had continued selling behind his back, greatly undercutting the prices Mr. Lambing had quoted to would-be customers, and flown an employee from Salt Lake City to this District in order to install the product. On February 3, 2025, Mr. Lambing asked SnapSports to review the matter and compensate him for the order. SnapSports told Mr. Lambing the only way for him to resolve his grievance was to contact Gerflor. Mr. Lambing contacted SnapSports' new corporate parent, Gerflor, and reported the illegal business activities of Gerflor's subsidiary SnapSports. Mr. Lambing expressly stated he was invoking California's laws protecting whistleblowers and wanted an investigation and resolution.

27. Gerflor had its attorney contact Mr. Lambing in California.

Klinedinst PC
501 West Broadway, Suite 1100
San Diego, California 92101

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

The attorney stated that he understood and that there should be a quick resolution. Afterward, however, no resolution was forthcoming, and SnapSports cut off Mr. Lambing from all leads and communications, while also demanding immediate payment for products that Mr. Lambing had ordered for customers.

28. The unsigned letter agreement described above in paragraph 19 contains a choice-of-forum clause listing the State of Utah as the forum for dispute resolution. Utah, however, would be such an inconvenient forum for Mr. Lambing and other members of the Plaintiff Class so as to make forcing them to litigate in that forum unjust. In addition, applying Utah law would undermine strong California public policies, including those embodied in the Unfair Competition Law, CAL. BUS. & PROF. CODE § 17200 *et seq.*, and CAL. BUS. & PROF. CODE § 7028.5.

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

**FIRST CLAIM FOR RELIEF**

**(for Violation of the Unfair Competition Law)**

29. Mr. Lambing repeats, re-alleges, and incorporates by reference the allegations set forth in the previous paragraphs of this claim for relief as though fully set forth herein.

30. SnapSports engaged in unlawful and fraudulent business practices by holding itself out as legitimate California contractor and by providing services for which a California contractor's license is required, thus violating pertinent laws, including but not limited to CALIFORNIA BUSINESS & PROFESSIONS CODE § 7028.5.

31. SnapSports' conduct as set forth above and incorporated herein constitutes unlawful, unfair, and/or fraudulent business acts or practices in violation of the laws of the State of California and other States where members of the Plaintiff Class reside.

32. SnapSports is – and always has been – fully aware or should have been aware, that the misconduct which it committed would cause Mr. Lambing and similarly situated class members to lose clients that the Plaintiff Class expended great deal of time, effort, and money to develop, whose information SnapSports would have never otherwise

obtained, and to whom SnapSports would have never had an opportunity to sell its products.

33. By these actions, SnapSports engaged in unfair competition in violation of pertinent State laws, including, *inter alia*, CAL. BUS. & PROF. CODE § 17200 *et seq.* As a direct and proximate result, members of the Plaintiff Class have suffered and will continue to suffer irreparable harm to their businesses, reputations, and goodwill.

34. Unless SnapSports is enjoined from its continuing violations of State law, members of the Plaintiff Class will continue to suffer the irreparable harm described above.

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

**SECOND CLAIM FOR RELIEF**

**(for Breach of Implied-in-Fact Contract)**

35. Mr. Lambing repeats, re-alleges, and incorporates by reference the allegations set forth in the previous paragraphs of this claim for relief as though fully set forth herein.

36. Through a course of dealing and multiple emailed and oral communications, SnapSports entered into implied-in-fact contracts with Mr. Lambing and other members of the Plaintiff Class. The material terms of these implied-in-fact contracts were these:

(a) SnapSports would refer all leads in a given territory to the dealer assigned to that territory, and refrain from direct dealings with actual or prospective customers during the Class Period;

(b) SnapSports would invoice its dealers for the wholesale cost of materials it sold to them in return for payments from the dealers during the Class Period; and

(c) SnapSports would respect the exclusivity of each dealer in each respective territory, without selling directly to customers in that territory or allowing other dealers to sell and install its products in that territory during the Class Period.

37. Mr. Lambing and the other members of the Plaintiff Class relied on the supposed integrity of SnapSports, and performed all material conditions of the implied-in-fact contracts which were not excused or discharged by SnapSports' breaches.

38. SnapSports breached the implied-in-fact contracts by repeatedly traveling its own personnel into Mr. Lambing's and the other class members' territories and directing them secretly to sell and install SnapSports products to customers with whom it was dealing directly.

39. As a direct and proximate result, Mr. Lambing and the other

Klinedinst PC
501 West Broadway, Suite 1100
San Diego, California 92101

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

Class Members suffered damages in amounts to be proven at trial.

**THIRD CLAIM FOR RELIEF**

**(for Tortious Interference with Prospective Economic Advantage)**

40. Mr. Lambing repeats, re-alleges, and incorporates by reference the allegations set forth in the previous paragraphs of this claim for relief as though fully set forth herein.

41. Mr. Lambing and similarly situated class members developed and maintain advantageous actual and prospective business relationships and business expectancies with clients and prospective clients, which relationships promised a continuing probability of future economic benefit to Mr. Lambing and the other class members. Throughout the lifetime of the Parties' business relationship, new and repeat customers would contact either SnapSports or members of the Plaintiff class to install SnapSports products in each dealer's district. Beginning on or about the second or third quarter of 2023, SnapSports Utah employees usurped the Plaintiff Class's installation orders of Snap products within each respective dealer's district.

42. SnapSports knew about Mr. Lambing and other class

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

members' advantageous actual and prospective business relationships and business expectancies.

43. The names of some of the persons with whom Mr. Lambing had these relationships include these: Grafflin Construction Inc., William Coulston, Kiefer U.S.A., Joseph Do, Jesus Deco, and Cetys Universidad. Because SnapSports operated in secret, shielding the Plaintiff Class from its illicit and duplicitous conduct, there may be other prospective relationships with which Snap Lock interfered which are not listed here. Mr. Lambing will add their names to the list of relationships interfered with by SnapSports after discovery reveals them.

44. SnapSports intentionally interfered with, and continues to interfere with, Mr. Lambing's and the Plaintiff Class's business relationships and business expectancies by, among other things, directly and/or indirectly inducing customers of the Plaintiff Class and prospective customers within the Plaintiff Class's respective territories to sever their relationships with the Plaintiff Class, and by underselling members of the Plaintiff Class via the offering of goods and services at prices significantly below those which members of the Plaintiff Class

could afford to charge.

45. There is no privilege or justification for SnapSports' prior conduct. On the contrary, SnapSports continues to interfere with the Plaintiff Class's business relationships and expectancies to this day.

46. As a direct and proximate result of SnapSports' tortious interference with members of the Plaintiff Class's actual and prospective business relationships, and expectancies, members of the Plaintiff Class have sustained and will continue to sustain irreparable injury, the damages from which cannot now be calculated and for which there is no adequate remedy at law. Accordingly, Mr. Lambing and similarly situated class members are entitled to injunctive relief and damages.

47. SnapSports' acts alleged hereinabove were willful, wanton, malicious, and oppressive and were undertaken with the intent to defraud the Plaintiff Class and California consumers, warranting an award of exemplary damages in an amount sufficient to punish SnapSports, make an example of them, and deter similar misconduct in the future by others.

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

## FOURTH CLAIM FOR RELIEF

**(for Preliminary and Permanent Injunctions)**

48. Mr. Lambing repeats, re-alleges, and incorporates by reference the allegations set forth in the previous paragraphs of this claim for relief as though fully set forth herein.

49. SnapSports' misconduct alleged hereinabove has caused and is continuing to cause great and irreparable injury to members of the Plaintiff Class and to fair competition in this District and in other California Districts.

50. In addition, SnapSports' actions violate the rights of members of the Plaintiff Class in a way which could tend to render a money judgment ineffectual and make pecuniary compensation inadequate.

51. Moreover, SnapSports' misconduct has made it extremely difficult to ascertain the amount of compensation which would afford adequate relief to the Plaintiff Class.

52. Restraint is necessary in order to prevent the multiplicity of judicial proceedings already threatened by SnapSports.

53. For the foregoing reasons, the Plaintiff Class is entitled to

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

preliminary and permanent injunctions which will prohibit SnapSports from further acts of misconduct as alleged hereinabove in paragraphs 19-28.

**PRAYER FOR RELIEF**

**WHEREFORE,** Mr. Lambing prays for relief as follows:

A. For general and special damages in an amount to be proven at trial;

B. For preliminary and permanent injunctions restraining SnapSports from further misconduct of the type alleged hereinabove;

C. For a decree declaring the parties' respective rights and legal relations in the premises under 28 U.S.C. § 2201;

D. For an award of exemplary damages in an amount sufficient to make an example of SnapSports and to deter others from similar misconduct in the future;

E. For an award of such attorneys' fees and costs as are authorized by law; and

F. For such other and further relief as the Court should deem just and proper.

Respectfully submitted,

KLINEDINST PC

DATED: March 27, 2026

By: s/Dan Lawton
Dan Lawton
Arianna Camargo
Attorneys for Plaintiff Jeff Lambing and all others similarly situated

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

## DEMAND FOR TRIAL BY JURY

Mr. Lambing demands a trial by jury as to all claims triable by jury according to pertinent law, including under the Seventh Amendment of the U.S. Constitution.

Respectfully submitted,

KLINEDINST PC

DATED: March 27, 2026

By: s/Dan Lawton
Dan Lawton
Arianna Camargo
Attorneys for Plaintiff Jeffrey Lambing and all other persons similarly situated